IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

EASY MONEY, INC., )
D/B/A EASY MONEY PAWN SHOP )
　　　　　　　　　　　　　　　　　　　　　　　 )
　　　　　　　Plaintiff, )
　　　　　　　　　　　　　　　　　　　　　　　 )
v. ) No. 08-1237 WEB
　　　　　　　　　　　　　　　　　　　　　　　 )
WILLIAM L. BOWERS, )
DIRECTOR OF INDUSTRY OPERATIONS, )
KANSAS CITY FIELD DIVISION, )
BUREAU OF ALCOHOL, TOBACCO, )
FIREARMS AND EXPLOSIVES )
　　　　　　　　　　　　　　　　　　　　　　　 )
　　　　　　　Defendant. )
　　　　　　　　　　　　　　　　　　　　　　　 )

## M<span style="font-variant:small-caps">emorandum and</span> O<span style="font-variant:small-caps">rder</span>

In this action, Plaintiff Easy Money, Inc., challenges the decision of the Defendant William L. Bowers–Director of Industry Operations, Kansas City Field Division, Bureau of Alcohol, Tobacco, Firearms and Explosives–to revoke Plaintiff's firearm's license.

This matter comes before the Court on the Defendant William L. Bowers' Motion for Summary Judgment (Doc. 14). The Defendant's motion was filed on March 27, 2009. The Plaintiff, Easy Money, Inc., filed a response (Doc. 23) on June 8, 2009. The Defendant filed a reply (Doc. 26) on July 29, 2009. Upon review of these documents and their respective exhibits, the Court finds that with respect to the issues raised in the Motion for Summary Judgment there is no genuine issue of material fact. For the reasons set forth herein, the Court finds that the Defendant is entitled to summary judgment.

1

The Plaintiff cites the Gun Control Act of 1968 ("the GCA") and asserts that a firearms license can only be revoked for willful violations of the GCA. Plaintiff asserts that all violations alleged by the Defendant were inadvertent paperwork errors that are insufficient to meet the willfulness standard.

The Defendant argues while the ATF may revoke a license for a single willful violation, the record establishes multiple willful violations by the Plaintiff. Further, the Defendant asserts that the administrative record establishes that the DIO, acting on behalf of the Attorney General, was authorized to revoke Easy Money's license.

## **Standard of Review**

Two legal standards are applicable in this case: (i) the standard of *de novo* review pursuant to 18 U.S.C. § 923(f)(3); and , (ii) the standard for summary judgment pursuant to Federal Rule of Civil Procedure 56.

Under 18 U.S.C. § 923 (f)(3), a licensee is entitled to a *de novo* judicial review of the ATF's decision to revoke the dealer's license. While a court "may" conduct a *de novo* review, courts often grant summary judgment without conducting an evidentiary hearing when no genuine issue of material fact exists. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

The Gun Control Act of 1968, 18 U.S.C. § 921-928, "requires every person who engages in business as an importer, manufacturer, or dealer in firearms or ammunition to be properly licensed by the Secretary of the Treasury." *Trader Vic's Ltd. v. O'Neill*, 169 F.Supp.2d 957, 962 (N.D. Ind. 2001). "Any single violation of the federal statutes or regulations controlling the firearms industry can be a basis for denying an application for a new license or revoking an

existing license." *Breit & Johnson Sporting Goods, Inc. v. Ashcroft,* 320 F.Supp. 2d 671, 678 (N.D. Ill. 2004), *quoting Trader Vic's Ltd.,* 169 F.Supp. 2d at 963.

Summary judgment is appropriate when "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores*, 144 F.3d 664, 670 (10th Cir. 1998), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.*

The Court views the evidence and all reasonable inferences in favor of the non-moving party. *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1108 (10th Cir. 2001). "The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler,* 144 F.3d at 670-671. The movant can meet this burden by demonstrating a lack of evidence on an essential element of the nonmovant's claim. *Id.* at 671. When the

> movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.

*Id.*, *citing* Fed. R. Civ. P. 56(e).

"To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F. 3d at 671 (internal citations and quotations omitted). The nonmoving party cannot defeat a properly supported motion for summary judgment by relying on conclusory allegations; rather, the opposing party must come

3

forward with significant admissible probative evidence supporting that party's allegations. *Anderson*, 477 U.S. at 256.

"The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance." *Wade v. EMCASCO Ins. Co.,* 2004 WL 5550384 (D.Kan.), *citing Dayton Hudson Corp. v. Macerich Real Estate Co.,* 812 F.2d 1319, 1323 (10th Cir.1987).

## Facts

The Court finds the following facts to be substantively uncontroverted. To the extent that requested findings of fact are not included here, it is because the Court finds that the requested findings are unsupported in the evidence, irrelevant, or duplicative of other requested facts. The presentation of repetitive, irrelevant, and cumulative evidence does not create any triable issue of material fact.

1. The revocation of Easy Money's license as a dealer in firearms was based on the violations set forth in the Notice of Revocation of License, issued September 13, 2007, by ATF Director of Industry Operations, William L. Bowers. (Notice of Revocation, Doc. 12-9).

2. The Notice of Revocation of License, lists 14 categories of violations with subparagraphs detailing discrete violations, and includes citations to applicable statutes and regulations. (Doc. 12- 9, pp. 2-7).

3. In testimony at the administrative hearing, Easy Money did not dispute that the categories of violations set forth in the Notice of Revocation of License occurred, but argued that the violations were not willful. (Doc. 12-6, pp. 223, 226, and 236).

4. During the administrative hearing, Elliott Werbin, President of Easy Money, Inc.,

4

indicated that "I understand we did wrong" and that "everything that's happened here is our screw ups." (Doc. 12-6, pp. 137, 228, and 236). Werbin also stated that the paperwork required by the regulations is minor. (Doc. 12-6, p. 225).

5. The Final Notice of Revocation of Firearms License was served on Easy Money by William L. Bowers, DIO, on July 10, 2008. (Doc. 12-8). The Final Notice of Revocation was issued based on the findings and recommendations of the hearing officer. (Report of Hearing Officer, Doc. 12-7). The Final Notice of Revocation lists 14 categories of violations which the DIO found to be willful:

>Violation # 1-Failure to report the theft/loss of firearms within 48 hours of discovery;

>Violation # 2-Failure to provide Youth Handgun Safety Act notices;

>Violation # 3-Failure to record acquisitions and properly maintain the A&D Book;

>Violation # 4-Failure to record dispositions and properly maintain the A&D Book;

>Violation # 5-Transfer of a firearm to a person who states they are not the actual buyer;

>Violation # 6-Transfer of firearms to persons who state they are prohibited;

>Violation # 7-Failure to obtain proper identification of purchaser;

>Violation # 8-Failure to record identification information of purchaser;

>Violation # 9-Failure to obtain 90 days proof of residency from aliens;

>Violation #10-Failure to record NICS responses;

>Violation #11-Failure to contact NICS prior to transfer of firearms after 30 days;

>Violation #12-Failure to wait three business days prior to transferring firearm after receiving a delay response from NICS;

>Violation #13-Failure to report the multiple sale of handguns; and

Violation #14-Failure to obtain purchaser's certification prior to firearm transfer. (Doc. 12-8, pp. 3-13).

6. Easy Money has more than one business where it deals in firearms. (Doc. 12-6, pp. 84, 221).

7. Easy Money is located in Wichita, Kansas and was licensed as a dealer in firearms in 1994. (Doc. 12-6, p. 44). Werbin is the President of Easy Money and "run[s] the company." (Doc. 12-6, p. 4).

8. In November 1998, a compliance inspection by ATF was conducted which resulted in citations including failure to obtain a complete Form 4473 prior to the transfer of a firearm and failure to complete a multiple sales report. (Doc. 12-6, p. 20; Doc. 12-15, pp. 1-2). The provisions of the law and regulations were reviewed with the licensee, specifically regarding Form 4473 and multiple sales, and thereafter the licensee completed an acknowledgment that this review had taken place. *Id.*

9. In May 2000, another compliance inspection by ATF was conducted and the licensee was cited for failure to locate five firearms during the inspection. (Doc. 12-6, p. 21; Doc. 12-15, pp. 3-4). The provisions of the law and regulations were again reviewed with the licensee; including the regulations regarding the A&D Book, multiple sales reports, and Form 4473; and thereafter the licensee completed a written acknowledgment that this review had taken place. (Doc. 12-6, p. 22; Doc. 12-15, p. 4).

10. The revocation of the federal firearms license issued to Easy Money was based on 14 categories of violations found during a 2007 compliance inspection. The failure to report the multiple sales of handguns and the failure to record the disposition of firearms are both repeat

categories of violations from previous compliance inspections. (Doc. 12-6, pp. 20-22; Doc. 12-8).

11. Easy Money failed to report to ATF the theft or loss of six firearms within 48 hours after the theft or loss was discovered by Easy Money. (Theft/Loss Report, Doc. 12-16; Doc. 12-8). The theft/loss of the Beretta pistol, SN: BU69740V, was discovered and reported to the Wichita Police Department ("WPD") on January 28, 2000; the Bersa pistol, SN: 050616, was discovered stolen/lost on May 30, 2007 and reported to the WPD on June 15, 2007; the Beretta pistol, SN: BR05134T, was discovered stolen/lost and reported to the WPD on May 14, 2002; the Browning pistol, SN: 37948A, was discovered stolen/lost and reported to the WPD on May 14, 2002; the Browning pistol, SN: 548134, was discovered stolen/lost and reported to the WPD on August 19, 2002; and the Magnum Research pistol, SN: 80251, was discovered stolen/lost and reported to the WPD on November 10, 1994. (Doc. 12-6, pp. 51-52; Doc. 12-16). The thefts or losses were reported to the WPD but not to ATF. (Doc. 12-6, pp. 46-47). The licensee had reported the theft or loss of firearms on previous occasions to ATF, indicating that the licensee was aware of the requirement to notify ATF when firearms were discovered lost or stolen. (Doc. 12-6, pp. 27-28, 47, and 56).

12. Easy Money acquired 21 firearms into inventory, but the firearms were not recorded in the licensee's A&D Book and seven of the acquisition entries in the licensee's A&D Book had an incorrect serial number recorded. (Doc. 12-6, pp. 63-64; Inventory Worksheet/Report of Violations, Doc. 12-17). Werbin was given four weeks to find the firearms in the A&D Book, but none of these firearms were found. (Doc. 12-6, p. 65.)

13. Easy Money failed to record the disposition of 76 firearms in the licensees' A&D

Book and 79 firearms were missing from the licensee's inventory. (Doc. 12-6, pp. 87-126; Doc. 12-17; Licensee's Exhibit - list of firearms in inventory, Doc. 12-27). Prior to the administrative hearing, there were 106 firearms missing from the licensee's inventory. (Doc. 12-6, pp. 87-88; Doc. 12-8; Doc. 12-17). Easy Money had previously been cited for this violation in 2000. (Doc. 12-6, p. 21; Doc. 12-15, pp. 3-4).

14. Easy Money transferred a firearm after the transferee answered "No" to Item 11.a. ("Are you the actual buyer of the firearm(s) listed on this form?") of the Form 4473. (Doc. 12-6, pp. 140- 141; ATF Form 4473 (not actual buyer), Doc. 12-18). Werbin indicated that this was a mistake and Easy Money should have caught it before the firearm was transferred. (Doc. 12-6, pp. 141-142).

15. Easy Money transferred a firearm to a person who answered "Yes" to Item 11.i. ("Have you ever been convicted in any court of a misdemeanor crime of domestic violence?") of the Form 4473; to a person who answered "Yes" to Item 11.j. ("Have you ever renounced your United States citizenship?") of the Form 4473; and to a person who answered "Yes" to Item 11.k. ("Are you an alien illegally in the United States?") of the Form 4473. (Doc. 12-6, pp. 144-147, 152-153; ATF Form 4473 (sale to prohibited persons), Doc. 12-19). The last Form 4473 had the "Yes" circled but the transfer still occurred and no corrective action was taken prior to the 2007 compliance inspection. (Doc. 12-6, pp. 153-154).

16. Six firearms were transferred by Easy Money without examining and recording on the Form 4473 a valid identification document prior to the transfer of a firearm; and on approximately 18 occasions the licensee failed to examine and record on the Form 4473 the proper supplemental identification information prior to the transfer of a firearm. (Doc. 12-6, pp.

159-163, 174-181; Doc. 12-9; Doc. 12-14; ATF Form 4473 (recording identification), Doc. 12-20). Easy Money argued that one of the six violations for not examining a valid license prior to the transfer of a firearm was not a violation because an expired license is a valid license in Kansas, but the licensee provided no proof of the license's validity. (Doc. 12-6, p. 164). The information recorded on the Form 4473 indicates that the transferee, Matthew Crane, provided an expired driver's license as identification for the transfer of a firearm. (Doc. 12-6, p. 163; Doc. 12-20, pp. 10-12).

17. On 26 occasions, Easy Money failed to record on the Form 4473 the required information for a valid identification document prior to the transfer of a firearm. (Doc. 12-6, p. 180; Doc. 12-9; Doc. 12-14; Doc. 12-20).

18. Easy Money failed on two occasions to obtain proper 90 day proof of residency documentation prior to the transfer of a firearm. (Doc. 12-6, pp- 181-187; ATF Form 4473 (proof of 90 day residency), Doc. 12-21). A firearm was transferred to Soeun, an alien from Thailand, on February 27, 2007, without first receiving proof of 90 day residency prior to the transfer and recording it in Item 20.b. of the Form 4473. (Doc. 12-6, pp. 181-186; Doc. 12-21). Another firearm was transferred to Mounguhoth, an alien from Laos, on February 25, 2006 without first receiving proof of 90 day residency prior to the transfer and recording it in Item 20.b. of the Form 4473. (Doc. 12-6, pp. 186-187). The instructions for Item 20.b. on the ATF Form 4473 specifically state that additional documentation, to prove the purchaser has continuously resided in the state for the 90 days immediately prior to the transfer of the firearm, is required for aliens and that the documentation must be in addition to government issued photo identification. (Doc. 12-6, pp. 185-185).

19. Easy Money failed to record the response from NICS in 21.c. of Form 4473; and on approximately 26 occasions the licensee failed to record the response from NICS in Item 21.d. of Form 4473, after initially receiving a delay from NICS. (Doc. 12-6, pp. 188-190; ATF Form 4473 (recording NICS information, Doc. 12-22). Although it cannot be determined by the Forms 4473, it is assumed that the firearms were not transferred prior to receiving a response from NICS and that the licensee only failed to record the responses received from NICS.

20. On two occasions, Easy Money transferred a firearm after 30 days elapsed from the date NICS was initially contacted. (Doc. 12-6, pp. 194-196, 198-199; ATF Form 4473 (No NICS prior to transfer), Doc. 12-23). Werbin's only explanation was that it must have been a lay-away firearm. (Doc. 12-6, pp. 199-200).

21. Easy Money failed to wait three business days prior to the transfer of a firearm when NICS delayed the transaction. (Doc. 12-6, pp. 200-202; ATF Form 4473 (Transfer after NICS delay), Doc. 12-24). Werbin indicated that Easy Money transferred a firearm to Greeley on December 26, 2006, before receiving notification from NICS on December 30, 2006. (Doc. 12-6, pp. 202-203). Werbin admitted that NICS told him the computers were down when he called on December 26, 2006, so no determination of whether a firearms transaction should receive a "proceed" could be made. (Doc. 12-6, p. 203). Werbin states that on December 26, 2006 while the computers were still down, NICS told him that "it would be a proceed and that they would call us and proceed it, so we went ahead and delivered the gun." *Id.* However, Werbin stated that NICS did not call back until December 30, 2006 with the actual "proceed." *Id.*

22. Easy Money failed to report seven multiple handgun sales after being advised of the requirement as evidenced by Werbin's signed acknowledgments in connection with the 1998 and

2000 compliance investigations. (Doc. 12-6, pp. 19-22, 204-206; Doc. 12-15; ATF Form 4473 (Unreported multiple sales), Doc. 12-25). ATF also found that Easy Money had reported several other multiple sales in the past. (Doc. 12-6, pp. 208-210).

23. Easy Money failed to obtain an ATF Form 4473 with the date of transferee's certification in Item 17. (Doc. 12-6, pp. 216-217; ATF From 4473 (Failure to date certification), Doc. 12-26). Easy Money admitted that the date was not recorded so there is no indication of the certification date. (Doc. 12-6, p. 218).

24. Easy Money received its federal firearms license in 1994. [Hearing Transcript, p.44].

25. On November 17 and 18, 1998, ATF agents conducted a compliance inspection at Easy Money (hereinafter, "the 1998 compliance inspection"). [ECF Doc. 12-15, Hearing Exhibit 7].

26. A "Report of Violations" resulting from the 1998 compliance inspection listed two violations, set forth as follows:

> Firearms Transaction Record – ATF F 4473 – Failed to obtain a properly completed 4473 prior to the transfer of a firearm on 8 separate occasions.
>
> Multiple Handgun Transfer – ATF F 3310.4 was not completed and submitted as required.
>
> [ECF Doc. 12-15, Hearing Exhibit 7].

Elliot Werbin signed the 1998 Report of Violations, and his employee signed the attached page, attesting that "I agree that the above information was thoroughly explained to me by an ATF Inspector and any questions regarding the above information was answered."(Report of Violations, Doc 12-15, p. 2).

27. On May 24, 2000, ATF agents conducted a compliance inspection at Easy Money

11

(hereinafter, "the 2000 compliance inspection"). [ECF Doc. 12-15, Hearing Exhibit 7].

28. A "Report of Violations" resulting from the 2000 compliance inspection listed one violation, set forth as follows:

> Computer Printout Open Entries not in agreement with inventory on hand. Five firearms could not be located.

[ECF Doc. 12-15, Hearing Exhibit 7]. The Report was signed by Elliot Werbin. (Doc. 12-15, p. 3-4). Also, the form instructed Easy Money that the missing weapons should be found and if they cannot be found they need to "show as disposition in computer [sic]." (*Id.* at pp. 3-4).

29. In May 2007, ATF agents conducted a compliance inspection at Easy Money (hereinafter, "the May 2007 compliance inspection"). [Hearing Transcript, 12:18 – 13:6].

30. The ATF agents began the May 2007 compliance inspection by completing an inventory of the firearms located at Easy Money. [Hearing Transcript, 13:15 – 13:16]. Easy Money assisted the ATF agents by printing a computerized listing of its inventory. [*Id.* at 14:20 – 14:23].

31. None of Defendant's witnesses present at the Administrative Hearing on Easy Money's license revocation participated in the 1998 or 2000 compliance inspections. [Hearing Transcript 29:16 – 29:25]. Neither did any of the ATF's witnesses present at the Hearing ever speak with the ATF agents who participated in the 1998 or 2000 compliance inspections. [*Id.* at 30:1 – 30:9]. The hearing officer noted that the agents from those inspections were not needed because the signed Reports of Violations proved that those inspections and violations occurred. (Hearing Trans., Doc. 12-6, 30:21- 30:23).

32. An ATF agent testified as follows at the Hearing:

When you sell a handgun, you're required to pass on a pamphlet, a Youth Safety

Act pamphlet, along with that handgun. You're also required to have a Youth poster. [Easy Money] did have the poster displayed. However, he did not have any pamphlets available to hand out with handgun transfers, and I believe that he stated that he had meant to order some more, but he had just forgotten to order them.

[Hearing Transcript, 58:14 – 58:21].

33. The ATF agents did not ask Werbin when he ran out of Youth Safety pamphlets. [Hearing Transcript, 61:24 – 62:1].

34. Violation No. 3 on the Notice of Revocation alleges that on 21 occasions, firearms were not listed as acquisitions in the Acquisition and Disposition Book. [Hearing Transcript, 63:12 – 63:16].

35. The Acquisition and Disposition Book ("A&D Book") is a log in which licensees indicate when and from whom firearms are acquired, and when and to whom firearms are disposed of. [Hearing Transcript, 63:17 – 63:20].

36. Easy Money's A&D Book is computerized. [Hearing Transcript, 63:21 – 63:25].

37. During the May 2007 compliance inspection, ATF agents audited Easy Money's A&D Book by comparing its entries to the firearms within Easy Money's inventory. [Hearing Transcript, 64:1 – 64:9]. ATF agents testified that it took two of them "a whole week" and "a lot of over hours" (overtime) in order to complete their comparison of Easy Money's inventory with its A&D Book. [Hearing Transcript, 64:4 – 64:12].

38. Werbin did not know how he acquired the firearms in his inventory which ATF agents discovered were not recorded in the A&D Book. [Hearing Transcript, 64:22 – 64:25]. Werbin had no recollection of how he acquired such firearms. [*Id.*].

39. Some of the 21 firearms were discovered to have been contained in the A&D Book at

13

one time, but were logged out. [Hearing Transcript, 70:14 – 70:15, 74:11 – 74:19].

40. During the May 2007 Compliance Inspection, ATF agents were unable to locate in Easy Money's inventory 182 firearms contained in Easy Money's A&D Book. [Hearing Transcript, 87:15 – 87:16].

41. Werbin produced Form 4473's for 76 of the 182 firearms, leaving 106 firearms unaccounted for at the conclusion of the 2007 compliance inspection. [Hearing Transcript, 88:1 – 88:13]. However, he was cited for their untimely disposition because the dispositions were not entered within seven days of transfer.

42. 76 firearms remained unaccounted for at the time of the administrative hearing.

43. On March 3, 2006, Jim Currans allegedly transferred a firearm to an individual who checked "No" on the Form 4473 when asked if she was the actual buyer of the firearm. [Hearing Transcript, 140:16 – 140:24].

44. On February 26, 2007, Mark [last name unknown] transferred a firearm to a Felicia W. after she indicated on Form 4473 that she had been convicted of a crime of domestic violence. [Hearing Transcript, 144:1 – 144:13].

45. On November 18, 2006, Easy Money transferred a firearm to Kimberly L. after she indicated on Form 4473 that she had renounced her United States citizenship. [Hearing Transcript, 147:1 – 147:14].

46. On December 1, 2006, on the Form 4473, Sherrie S. answered "Yes" to a question asking whether she was an illegal alien. [Hearing Transcript, 152:19 – 153:3].

47. On May 11, 2006, Easy Money failed to write down the transferee's driver's license number on the Form 4473 before transferring a firearm. [Hearing Transcript, 159:5 –159:18].

48. On January 25, 2007, Easy Money failed to write down contact information for Anthony W. before transferring a firearm to him. [Hearing Transcript, 160:15 – 161:25].

49. On May 1, 2007, Easy Money accepted an expired driver's license as proof of the transferee's identification and recorded the expiration date on the Form 4473. [Hearing Transcript, 163:10 – 163:20].

50. In 2006, Easy Money transferred firearms to members of the military who presented an Armed Forces identification card, but not their duty station orders. [Hearing Transcript, 170:11 – 171:25, 178:14 – 178:25].

51. Easy Money transferred a firearm to David A., who wrote down a Kansas address on the front of the Form 4473 but who presented a Texas driver's license as proof of identification. [Hearing Transcript, 175:4 – 175:8].

52. In regard to Violation No. 9, Easy Money obtained a permanent resident card and driver's license from resident aliens, but failed to obtain supplemental proof (in the form of utility bills, for instance) of 90 days' of residency. [Hearing Transcript, 182:8 – 182:22, 183:18– 185:21].

53. Easy Money's alleged failure to record NICS responses was summarized during the hearing as follows:

> Q: And it appears from this form that they just didn't check the box and they should have. Is that a fair assessment of the technical violation we've got on this 4473?
> A: Yes.

[Hearing Transcript, 191:7 – 191:11].

54. Easy Money actually received responses from NICS which allowed Easy Money to

transfer the firearms at the times such were transferred. [Hearing Transcript, 189:4 – 189:23]. Again, Easy Money just failed to place a checkmark in a box. [Hearing Transcript, 191:7 – 191:11]. Defendant concedes Easy Money transferred no firearms prior to receiving a response from NICS. ECF Doc. 15, p. 9, ¶ 20 (conceding, "the licensee only failed to record the responses received from NICS.").

55. On December 26, 2006, Easy Money received a "delay" response from NICS. Werbin called NICS and an individual told him that the NICS computer system was down. Easy Money transferred the firearm on December 26, 2006 [Hearing Transcript, 203:5 – 203:10].

56. Easy Money received confirmation of the "proceed" from NICS on December 30, 2006. [Hearing Transcript, 203:14 – 203:21].

57. Violation No. 14 consists of an instance in which the purchaser signed –but did not date – the purchaser's certification contained on the bottom of the Form 4473. [Hearing Transcript, 216:7 – 218:18].

## **Discussion**

"The word 'willfully' is sometimes said to be 'a word of many meanings' whose construction is often dependent on the context in which it appears." *Bryan v. United States,* 524 U.S. 184, 191 (1998) (citing *Spies v. United States,* 317 U.S. 492, 497 (1943)).

In a criminal case under the GCA "[a] person acts willfully if he acts intentionally and purposefully and with the intent to do something the law forbids, that is, with the bad purpose to disobey or to disregard the law. Now, the person need not be aware of the specific law or rule that his conduct may be violating. But he must act with the intent to do something that the law forbids." *Bryan v. United States,* 524 U.S. 184, 190 (1998). The "willfulness requirement of

16

[the GCA] does not carve out an exception to the traditional rule that ignorance of the law is no excuse; knowledge that the conduct is unlawful is all that is required." *Id.* at 196.

Most courts addressing the issue of willfulness in civil cases regarding the GCA have determined that a "violation is 'willful' ... 'if a dealer understands the requirements of the law, but knowingly fails to follow them or was indifferent to them.'" *Harrison v. Dep't of Treasury,* 2006 WL 3257401 (E.D. Okla.) (citing *3 Bridges, Inc. v. United States,* 216 F.Supp.2d 655, 657 (E.D. Ky. 2002) (quoting *Perri v. Dep't of Treasury*, 637 F.2d 1332 (9th Cir. 1981)).)

In *Bridges,* the court found a willful violation of the GCA where the licensee had been a dealer for ten years and had manuals on compliance with the GCA. *3 Bridges, Inc.,* 216 F.Supp.2d at 658-59. "The venerable maxim that 'ignorance of the law is no excuse' undoubtedly applies here." *Harrison,* 2006 WL 3257401 at 6 (citing *Ellers, Oakley, Chester & Rike, Inc., v. St. Louis Air Cargo Services,* 984 F.2d 1108, 1111 (10th Cir. 1993) (defendant was aware of legal requirements, "or, as a matter of law, is presumed to be aware of those requirements. Ignorance of the law (if, in fact, [the defendant] was not knowledgeable) is no excuse.").

The 7th Circuit has found willfulness when a licensee "knew of his legal obligation and purposefully disregarded or was plainly indifferent to the record keeping requirements." *Article II Gun Shop, Inc. v. Gonzales,* 441 F.3d 492, 497 (7th Cir. 2006). The 6th Circuit held that "where a licensee understands his or her legal obligations under the GCA, yet fails to abide by those obligations, his or her license can be denied or revoked on the basis that the dealer 'willfully' violated the GCA." *Appalachian Res. Dev. Corp. v. McCabe,* 387 F.3d 461, 464-65 (6th Cir. 2004).

Plaintiff does not dispute the numerous violations found by the ATF. Therefore, the only issue for this Court is whether those violations were willful. "The Attorney General may...revoke any license issued under this section if the holder of such license has willfully violated any provision of this chapter of any rule or regulation prescribed by the Attorney General under this chapter." 18 U.S.C. § 923(e).

A finding that one of the violations in this case was willful would be sufficient to justify the revocation of Plaintiff's license. *See, Breit & Johnson Sporting Goods, Inc. v. Ashcroft,* 320 F.Supp. 2d 671, 678 (N.D. Ill. 2004) (quoting *Trader Vic's Ltd.,* 169 F.Supp. 2d at 963) (holding that a "single violation of the federal statutes or regulations controlling the firearms industry can be a basis for denying an application for a new license or revoking an existing license.")

The uncontroverted facts in this case establish a series of events–inspections and violations–that in view of the applicable case law constitute willful violations. In November of 1998, ATF conducted a compliance inspection which resulted in citations. The applicable provisions of law were reviewed with the licensee and the licensee completed an acknowledgment that the review had taken place. At that point, the licensee knew of the requirements.

In May 2000, ATF conducted another compliance inspection and the licensee was cited for more violations. The provisions of law and regulations were again reviewed with the licensee and the licensee then completed a written acknowledgment that the review had taken place.

The revocation of Plaintiff's license was based on 14 categories of violations found during the 2007 compliance inspection. Two of the categories (failure to report multiple sales of

handguns and failure to record the disposition of firearms) are repeat categories from previous compliance inspections.

"Evidence of repeated violations with knowledge of the law's requirements has been held sufficient to establish willfulness." *Breit & Johnson,* 320 F.Supp.2d at 678 (citing *Stein's Inc.,* 649 F.2d at 467). *See also, Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms and Explosives,* 415 F.3d 1274, 1277 (11th Cir. 2005); *Lewin v. Blumenthal,* 590 F.2d 268 (8th Cir. 1979); *Athens Pawn Shop, Inc. v. Bennett*, 2010 WL 445478 (5th Cir.)(unpublished).

Here, the uncontroverted facts show that after the November 1998 and May 2000 inspections, the provisions of law and regulations were reviewed with the licensee. After this review, the licensee completed a written acknowledgment that this review had taken place. The fact that two of the categories of violations in the 2007 inspection are repeat categories from the previous inspections shows plain indifference to the laws and regulations.

The 4th Circuit has held that a "court may infer willful omission from a defendant's plain indifference to a legal requirement to act if the defendant (1) knew of the requirement *or* (2) knew generally that his failure to act would be unlawful." *RSM, Inc. v. Herbert,* 466 F.3d 316, 322 (4th Cir. 2006).

> To be sure, a single, or even a few, inadvertent errors in failing to complete forms may not amount to "willful" failures, even when the legal requirement to complete the forms was known. Yet *at some point,* when such errors continue or even increase in the face of repeated warnings given by enforcement officials, accompanied by explanations of the severity of the failures, one may infer as a matter of law that the licensee simply does not care about the legal requirements. *At that point,* the failures show the licensee's plain indifference and therefore become willful.

*Id.* (emphasis in original). The same can certainly be said of the case at hand. Although the Plaintiff asserts that the alleged violations were simply inadvertent paperwork errors that are

19

insufficient to meet the willfulness standard, the repeated nature of these violations, in the wake of ATF compliance inspections and citations together with the licensee written acknowledgments, *at some point* the violations show the licensee's plain indifference and become willful.

In the case at hand, there is a clear history of repeated warnings and repeated violations. The Plaintiff argues that a five year statute of limitations governs and that a "substantial number of the alleged violations at issue in this law suit occurred more than five years ago." Doc. 23, p. 21, citing 28 U.S.C. § 2462. However, as previously stated, only one willful violation is required to justify the revocation of a license. Further, courts have held that so long as the revocation is based on a violation within the five-year period allowed by the statute of limitations, "even if supported by evidence of intent that dated [prior to the period]," it is allowable. *See, e.g., RSM, Inc. v. Herbert,* 466 F.3d 316, 323 (4th Cir. 2006). Here, the violations were numerous and the Court can find ample support within the five-year statute of limitations period to justify the revocation.

## Conclusion

Therefore, the Court finds that at there are sufficient uncontroverted facts and evidence that the Plaintiff willfully violated the GCA. Therefore, the Defendant's Motion for Summary Judgment (Doc. 14) is GRANTED, and the Plaintiff's challenge to the revocation of its firearms licence is DENIED.

IT IS SO ORDERED this 21st day of June 2010.

s/ Wesley E. Brown  
Wesley E. Brown  
U.S. Senior District Judge